OPINION OF THE COURT
 

 Wachtler, J.
 

 The primary question on this appeal is whether the defendant’s credibility may be impeached by use of prior inconsistent statements which were suppressed at a pretrial hearing where the court had found, contrary to the police officer’s testimony, that the defendant had not been advised of his rights
 
 (Miranda v Arizona,
 
 384 US 436), and had, in fact, not
 
 *218
 
 made the statements attributed to him. The trial court and the Appellate Division, relying on
 
 Harris v New York
 
 (401 US 222), held the statements were admissible for impeachment and that it was for the jury to decide whether the defendant had made them.
 

 The defendant appeals claiming that the People were barred from using the statements for any purpose by the hearing court’s finding that he did not make them which, he urges, amounts to a determination that this evidence did not satisfy the "trustworthiness” standard mentioned as a proviso or prerequisite to admissibility in the
 
 Harris
 
 case. It is the People’s position that the term "trustworthiness” simply applies to, and prohibits the use of statements obtained involuntarily by duress or coercion. More fundamentally, however, the appeal poses the question as to whether a court may suppress or hold inadmissible a confession, or other evidence, on the ground that it was fabricated by the police, supported only by a factual finding that the court did not believe the police officer’s testimony.
 

 On the night of June 6, 1975 several police officers went to the defendant’s Brooklyn apartment to investigate a report of a man with a gun. The defendant’s wife admitted them to the apartment where they found the defendant asleep on a living room couch, with a gun protruding from his pants pocket. The police removed the gun, woke the defendant and placed him under arrest. The defendant was then asked where he got the gun and, according to the arresting officer, gave two different explanations. Initially the defendant stated that he had found the gun in a car. Later, however, at the station house he told the officer that his wife had planted the gun on him.
 

 Prior to trial the defendant moved to suppress the statements on the ground that they were "made in violation of the defendant’s Constitutional rights.” The arresting officer, who was the only witness at the hearing, testified that the defendant made the statements after being advised of his rights. However, defense counsel emphasized the fact that the officer had not mentioned the statements in his reports or at the preliminary hearing, and argued that the witness’ testimony regarding the statements "was manufactured out of whole cloth; that there never was a statement made by the defendant to the police officer at the time of the arrest”. Although the People urged that that was for the jury to decide and that the only issue before the pretrial suppression hearing court
 
 *219
 
 was whether the officer had advised the defendant of his rights, the court responded that "[T]he issue of [the officer’s] credibility goes to the entire issue as to whether or not I believe he did give the
 
 Miranda
 
 warnings, and whether these statements were made.” At the conclusion of the hearing the court held that "[T]he credibility of the police officer has been so impaired” that the People have failed to establish "beyond a reasonable doubt that the warnings were given and that these statements were made. Under those circumstances, the motion to suppress is granted as to those two statements.”
 

 At the trial the defendant’s wife and the arresting officer testified to the defendant’s possession of the weapon. There was also expert testimony the gun was operable. Before the defendant testified on his own behalf he moved to have the court preclude the People from cross-examining him with respect to the suppressed statements. He urged that the finding that the People had failed to prove that the defendant had made the statements, which finding was made by the Justice who presided at the pretrial suppression hearing, barred the People from using the statements pursuant to
 
 Harris v New York
 
 (401 US 222,
 
 supra).
 
 The trial court denied the motion noting that, at a suppression hearing, the People are not obliged to prove that the defendant made the statements.
 

 When the defendant testified at trial, he denied bringing the gun to the apartment or placing it in his pocket. He stated that on the night of his arrest he had an argument with his wife over his sister-in-law, who had been residing with them for several months, had been a constant source of irritation and was in the apartment when he returned from work that evening. He stated that after the argument he fell asleep and was not aware of the gun’s existence until he was awakened by the police. He denied making any statement to the police. On cross-examination he specifically denied making any statements to the effect that he had found the gun in a car, or that his wife had planted it on him. In rebuttal the People called the arresting officer who testified that the defendant had made the statements.
 

 The jury found the defendant guilty of criminal possession of a weapon in the third degree. The Appellate Division affirmed the conviction (68 AD2d 90). One Justice dissented and granted the defendant leave to appeal to this court.
 

 In
 
 Harris v New York
 
 (401 US 222, 224,
 
 supra)
 
 the Supreme
 
 *220
 
 Court held that statements obtained in violation of a defendant’s rights under
 
 Miranda v Arizona
 
 (384 US 436,
 
 supra),
 
 and thus inadmissible as evidence in chief, may nevertheless be used to impeach the defendant’s credibility "provided of course, that the trustworthiness of the evidence satisfies legal standards.” It is clear that the rule applies to any violation of the defendant’s rights under the
 
 Miranda
 
 decision
 
 (Oregon v Hass,
 
 420 US 714;
 
 People v Wise,
 
 46 NY2d 321, 329). It is also apparent that the prosecutor may use the statements on cross-examination of the defendant
 
 (Harris v New York, supra)
 
 or on rebuttal by calling another witness to testify that the defendant made them
 
 (Oregon v Hass, supra).
 
 The meaning of the proviso, however, has not been explained, and is not readily apparent (see, e.g., Stone, Miranda Doctrine in the Burger Court, 1977, Supreme Ct Rev 99, 113-114).
 

 The District Attorney urges that the term "trustworthiness” refers to voluntariness, noting that in subsequent cases the court has held that a defendant may not be impeached by a statement obtained involuntarily as a result of physical duress
 
 (Mincey v Arizona,
 
 437 US 385) or legal compulsion
 
 (New Jersey v Portash,
 
 440 US 450). But the court has long abandoned the idea that trustworthiness and voluntariness are synonomous. It is now recognized that involuntary confessions are inadmissible "not because such confessions are unlikely to be true but because the methods used to extract them offend” the Constitution
 
 (Rogers v Richmond,
 
 365 US 534, 540-541). Actually the cases cited by the District Attorney, in which the court held involuntary statements inadmissible even for impeachment, turned upon this latter principle and did not involve interpretation or application of the "trustworthiness” standard mentioned in
 
 Harris
 
 (see, e.g.,
 
 Mincey v Arizona, supra, at
 
 pp 397-398). Indeed in one of the cases, the court found the statement, which had been compelled under a grant of immunity
 
 during
 
 defendant’s appearances before a Grand Jury, was inadmissible despite its apparent trustworthiness because the "Fifth and Fourteenth Amendments provide a privilege against
 
 compelled
 
 self-incrimination, not merely against unreliable self-incrimination”
 
 (New Jersey v Portash, supra,
 
 at p 459). These cases, in fact, indicate that the court
 
 did not
 
 employ the term "trustworthiness” as a synonym for voluntariness.
 

 The defendant argues that a statement cannot be said to be trustworthy, and thus admissible under
 
 Harris,
 
 unless the
 
 *221
 
 court has made an independent determination that he did in fact make the statement as the police contend. He urges that the hearing court’s factual finding in this case should be deemed to have the effect of rendering the statement inadmissible, even for the limited purpose of impeachment.
 

 Traditionally, of course, any dispute as to whether the defendant made the statement would present a factual question for the jury to resolve. The common-law rules of evidence applicable to prior inconsistent statements do not require a court to make such a determination as a prerequisite to admissibility. On the contrary, the fact that the witness has denied making the statement is generally viewed as a proper, if not necessary, foundation for its admissibility to the jury (see, e.g., Richardson, Evidence [10th ed — Prince], § 502; see, also,
 
 People v Wise,
 
 46 NY2d 321,
 
 supra).
 
 Neither is such a determination a recognized part of a pretrial suppression hearing. Although the court must now make a preliminary determination, that a statement was voluntarily obtained
 
 (Jackson v Denno,
 
 378 US 368) and that the defendant was advised of his rights
 
 (Miranda v Arizona,
 
 384 US 436,
 
 supra),
 
 there has been no change in the long-standing rule that any dispute as to whether the defendant made the statement is a factual matter for the jury to decide
 
 (Lee v Mississippi,
 
 332 US 742, 745).
 
 *
 

 That is not to say, of course, that a claim of fabricated evidence does not touch the defendant’s constitutional rights. It is well settled that the defendant’s right to due process is violated if the People knowingly use perjured testimony on any material point (see, e.g.,
 
 Mooney v Holohan,
 
 294 US 103;
 
 Alcorta v Texas,
 
 355 US 28;
 
 Napue v Illinois,
 
 360 US 264;
 
 Miller v Pate,
 
 386 US 1;
 
 Giglio v United States,
 
 405 US 150;
 
 *222
 

 People v Robertson,
 
 12 NY2d 355). However, there is no reason why a disputed claim of fabricated evidence, involving only the credibility of witnesses, may not be resolved in the usual manner, by submitting the matter to the jury at trial. The question as to whether the police are telling the truth when they testify that the defendant made the statement does not involve complex questions of law and fact, similar to those involved in determining whether a statement was voluntary
 
 (Jackson v Denno,
 
 378 US 368, 390,
 
 supra),
 
 or whether the defendant was properly advised of his rights
 
 (Miranda v Arizona,
 
 384 US 436,
 
 supra).
 
 Nor does there appear to be any cause for fear that the jury will inject irrelevant and impermissible considerations into their assessment as to whether the defendant actually made the statement
 
 (Jackson v Denno, supra,
 
 at p 386). It is understandable that a jury may improperly rely upon a confession, which was obtained involuntarily, or in violation of the defendant’s rights, if it believes that it was nevertheless a truthful statement. It is hard to imagine, however, that jurors would hold a confession against the defendant if they find that it was entirely fabricated by the police. Notably the cited cases upholding the defendant’s constitutional right to a trial free of deliberately perjured testimony involved motions made after trial in which the perjury was conceded or irrefutably established, and the only question for the court concerned the materiality of the evidence. They did not involve pretrial or trial motions, requiring the court to pass upon pure questions of fact and credibility customarily reserved for the jury.
 

 Thus adoption of the defendant’s argument would require a rejection of traditional rules of evidence governing the admissibility of prior inconsistent statements and an extension of the recognized scope of pretrial suppression hearings to encompass claims of fabricated evidence as an independent ground for exclusion.
 
 Harris v New York
 
 (401 US 222,
 
 supra)
 
 cannot be read to require such a result. The purpose of the court’s decision in that case was not to alter the rules of evidence with respect to prior inconsistent statements but rather to preserve one of "the traditional truth-testing devices of the adversary process”
 
 (Harris v New York, supra,
 
 at p 225). And far from manifesting any intent to extend the exclusionary rule into new areas, the court expressly noted that its concern was to prevent an "extravagant extension” of the concept
 
 (Harris v New York, supra,
 
 at p 225, n 2).
 

 
 *223
 
 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
 

 Order affirmed.
 

 *
 

 Our decision in
 
 People
 
 v
 
 Briggs
 
 (38 NY2d 319) is not to the contrary. All that we decided in that case was that a statement could not be admitted at trial when the authorities had inexcusably failed to give the defendant the pretrial notice required by statute. Although we indicated that the defendant is entitled to be notified of "the fact” of the confession so that he may prepare his defense, we did not mean to suggest that a defendant who denied making the statement was entitled to have a pretrial determination of that fact. We recognize, of course, that in assessing the police officer’s credibility the hearing court may consider, as the court did in the case now before us, whether the defendant actually made a statement as the police contend, although a factual determination of that point is not essential to the resolution of the motion. A collateral finding of that nature, however, should not have the same effect as a factual finding the court must make in order to determine the substantive issues, as was the case in
 
 People v Zimbardo
 
 (21 NY2d 15; cf.
 
 Hinchey v Sellers,
 
 7 NY2d 287, 293).