■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN CABAN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered May 11, 1978, convicting him of manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. On August 1, 1977 Theodore Mark Stephens was shot and killed on a Brooklyn street. An eyewitness to the homicide told the police, and later testified in court, that the deceased had been approached and assaulted by a group of young men and that, in the course of the assault, one of the assailants had produced a gun and shot the deceased twice. The witness identified the gunman as the 17-year-old defendant, John Caban, whom he knew by sight. The day after the crime, detectives went to the defendant's apartment to arrest him for the homicide. Admitted into the apartment after some delay, the detectives found the defendant talking on the telephone to his attorney. As the officers placed the defendant under arrest, he handed the receiver to a detective and informed him that the attorney was on the telephone. The detective spoke with the attorney who advised him that the defendant would have nothing to say. Later, at the precinct, the defendant was advised of his constitutional (Miranda) rights and provided the police with "pedigree" information. When one of the detectives informed him of the evidence the police had, the defendant inquired as to the possibility of a "deal" on other cases pending against him in return for a full statement regarding the homicide. The detective told him that he was unable to strike such a bargain without first consulting the District Attorney. The defendant then said that he wished to speak with his attorney before having any further conversation with the detective. Thereafter, the discussion ceased and the defendant was joined by his wife and his mother. Sometime later, while still at the precinct, the defendant encountered Detective Aniello Petruzzi. Petruzzi was acquainted with the defendant and remarked to him, "Man, it looks like you're in a lot of trouble." The defendant agreed and then apparently told the detective that he had fired the shots only after the deceased had come at him with a knife. Prior to trial, the prosecution duly disclosed to the defendant all of the statements he had allegedly made to the police. The People conceded from the outset that the statement to Detective Petruzzi had to be suppressed. And, after a Huntley hearing, the defendant's earlier statement, relating to the possibility of a "deal", was also suppressed. The court ruled, however, that both statements could be used by the prosecution to impeach the defendant in the event he chose to testify. Thereafter, following a jury trial, the defendant was convicted of manslaughter and weapons possession. He neither testified nor offered any evidence in his own behalf. On appeal, the defendant contends that his statement to Detective Petruzzi should have been suppressed for all purposes including impeachment. He argues that the trial court's limited suppression ruling caused him serious prejudice in that it rendered him unable to present an effective alibi defense. A statement taken in violation of Miranda must be excluded from the prosecution's case-in-chief. Nevertheless, a Miranda violation, without more, will not require the suppression of the statement for all purposes. If the statement is voluntary in the traditional Fifth Amendment sense, it may be used as any

other impeachment device against a testifying defendant whose testimony differs materially from the statement. (See *Harris v New York*, 401 US 222; *People v Wise*, 46 NY2d 321; *People v Washington*, 51 NY2d 214.) Such use is permissible except where the statement has been obtained through physical or psychological coercion (see *Mincey v Arizona*, 437 US 385; cf. *Rogers v Richmond*, 365 US 534), through compulsion by operation of law (see *New Jersey v Portash*, 440 US 450), or through some other form of police overreaching (cf. *Oregon v Hass*, 420 US 714). In the case at bar, there is no suggestion in the record that the defendant, who was in the company of his family and who had exhibited no hesitancy in asking for his attorney when he felt he needed one, was in any way coerced by Detective Petruzzi into making the statement in which he claimed to have acted in self-defense. Indeed, although the court ruled prior to trial that the statement could be used for impeachment purposes, the defendant did not raise or request a hearing on the question of coercion. Instead he argued, as he does now, that the taking of the statement in the absence of counsel made it involuntary per se. We cannot agree. Although the Court of Appeals has expressed a "special solicitude" for a defendant's right to counsel, establishing protections beyond that required by the Federal Constitution (see *People v Cunningham*, 49 NY2d 203, 207), it has never expanded the exclusionary rule to the extent now suggested by the defendant. (Cf. *People v Washington*, 51 NY2d 214, 222, *supra.*) In our view, a defendant is afforded sufficient protection by excluding from the prosecution's case-in-chief statements obtained in violation of his *Miranda* rights. Absent some evidence of involuntariness, however, we see no reason to prohibit the use of such statements for impeachment purposes and thereby to provide a defendant with an opportunity to offer perjurious testimony without fear of challenge. (See *Oregon v Hass, supra; United States v Frank*, 520 F2d 1287, cert den 423 US 1087.) In the case at bar, there was no allegation and no evidence that the defendant's statement to Detective Petruzzi was in fact involuntary or the product of police overreaching. Accordingly, we decline to disturb the trial court's ruling that the statement could be used for impeachment purposes or to direct a hearing on the question of coercion — a hearing which the defendant himself did not see fit to request. We have examined the remaining contentions raised by the defendant and find them to be without merit. Mollen, P. J., Hopkins, Lazer and Mangano, JJ., concur.