Charles DAVIS, Petitioner,

v.

Raymond R. BARA, Superintendent, Robert Abrams, Attorney General, and District Attorney, Bronx County, Respondents.

No. CV 82–0114.

United States District Court,
E. D. New York.

June 29, 1982.

744

Charles Davis, pro se.

Robert Abrams, Atty. Gen. of the State of N. Y. by Frederic L. Lieberman, Deputy Asst. Atty. Gen., New York City, for respondents.

## MEMORANDUM & ORDER

PLATT, District Judge.

Charles Davis has petitioned this Court, *pro se*, pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. Petitioner is pres-

ently incarcerated in the Queensboro Correctional Facility for an indeterminate term of two to six years pursuant to a judgment of conviction entered July 17, 1980, in the Supreme Court, Bronx County (Sullivan, J.), after a trial by jury. Petitioner's conviction was unanimously affirmed on October 15, 1981, by the Appellate Division, First Department. *People v. Davis*, 84 App. Div.2d 689, 445 N.Y.S.2d 349. Petitioner's subsequent application to the New York Court of Appeals for leave to appeal was denied on November 10, 1981. *People v. Davis*, 55 N.Y.2d 750, 447 N.Y.S.2d ——, 431 N.E.2d 981.

### FACTS

Charles Davis was indicted on July 5, 1979, for manslaughter in the first degree (P.L. § 125.20) and criminal possession of a weapon in the fourth degree (P.L. § 265.-01), for the fatal stabbing of Leonard Logan on June 24, 1979. He was convicted of the lesser included offense of manslaughter in the second degree (P.L. § 125.15).

Prior to trial, on June 12, 1980, a joint *Huntley* and *Mapp* hearing was held before Mr. Justice Sullivan pursuant to petitioner's motion to: (1) suppress two statements made by him to police in his apartment; and (2) suppress physical evidence found in his apartment. The first statement sought to be suppressed, which is the subject of this petition, was "I stabbed him." (H. 9–10).* This statement was made prior to any *Miranda* warnings. The second statement, made after the warnings were given, concerned the location of the knife involved in the crime (H. 11–12). The physical evidence was the knife.

Following the testimony of petitioner and police officers, the court granted the motion to suppress both the statements "I stabbed him" and the statement concerning the whereabouts of the knife (H. 59–60). In so holding, the court determined that when the police came to petitioner's apartment, they were armed with information that pe-

* Numerals preceded by "H" refer to minutes of the joint hearings and those preceded by "T" refer to minutes of the trial.

titioner had stabbed the deceased and thus any questions posed by the officers were "in the nature of custodial interrogation." (H. 60, 85). Therefore, the court held that the first statement, "I stabbed him," would be inadmissible because it had been elicited from petitioner without warning him of his rights under *Miranda*. In suppressing the second statement, concerning the location of the knife, the court stated that: "it finds further that the [petitioner] had been drinking and that he, accordingly, was not in any position mentally to waive any constitutional rights. Accordingly, the Court finds that the statement which was elicited after the *Miranda* warnings was not voluntary and that the People have failed to meet their burden of proof, that is, beyond a reasonable doubt." (H. 60).

Although the court initially determined to suppress the physical evidence of the knife, found in petitioner's apartment (H. 60), upon motion to reconsider the court reversed its prior decision and denied the motion to suppress by reason of the "inevitable discovery" doctrine (H. 61, 82–84).

At trial, which commenced on June 12, 1980, before Mr. Justice Sullivan, petitioner testified in his own defense. On direct examination, petitioner was asked if he could remember telling the police that he stabbed anyone. Petitioner responded:

... The police—the police said—when I said—when he said, "The poor bastard across the hall," I says to him, "I don't know nothing about any poor bastard across the hall."

He said, "You know, you killed the poor bastard."

I said, "No, I don't remember killing anybody." I said, "I hasn't killed anyone." (T. 168–169).

On cross-examination, the prosecution attempted to direct petitioner's testimony to the first statement he made to the police officers in his apartment (T. 171). There-

upon, the court and counsel conferred at sidebar as to the basis for and scope of the court's previous *Huntley* suppression ruling. Thereafter, the court stated, outside the presence of the jury, that at the hearing it had found the statement, "I stabbed him" to be involuntary because petitioner was intoxicated and therefore it could not be used by the prosecution for any purpose. The prosecution excepted to the ruling and requested time to find cases to support its proposed use of petitioner's statement. The court granted the request.

When the trial resumed the next day, the prosecution failed to submit any cases. However, it argued that it should be allowed to use petitioner's statement, "I stabbed him", to impeach petitioner's credibility under the holding of *Harris v. New York*, since the first statement was suppressed only because of the failure to inform petitioner of his *Miranda* rights, not because petitioner was intoxicated. The court agreed (T. 177) and further found that the confession met the standard of trustworthiness required by *Harris* stating that it did "not find that the statement, 'I stabbed him', was coerced, forced, and/or extracted from the [petitioner]" or rose "to a constitutional level of involuntariness." (T. 177) *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Thus, the court permitted the prosecution to use the statement, "I stabbed him", for the limited purpose of impeachment and defense counsel excepted to that ruling (T. 177–78).**

### PETITIONER's CLAIMS

The petitioner's application to this Court for a writ of habeas corpus is based on three grounds:

(a) he was denied his right to a fair trial by the Court's ruling which allowed the prosecution to impeach him on cross-examination by use of a statement he made while intoxicated;

---

** For the complete transcript of the court's discussion with counsel and its subsequent holding, see Appendix I.

(b) the prosecution was given time to find cases to reverse the Court's suppression of petitioner's statement but was not able to find any such cases; and

(c) petitioner has been hospitalized, has had a pacemaker since June, 1981, is 67 years old and in poor health.

Each of these grounds will be discussed in the order in which they are presented.

Petitioner's first claim (as to which he has properly exhausted his State remedies) alleges that he was denied his right to a fair trial because the court allowed the prosecution to impeach him by use of the statement "I stabbed him," which was made to police before petitioner was advised of his rights under *Miranda* and while he was intoxicated. It is his contention, as evidenced by his brief on appeal to the Appellate Division, First Department, that this first statement was not reliable, and he relies on the lower court's findings at the *Huntley* hearing as to his second statement—involuntary because he was too intoxicated to have knowingly and intelligently waived his *Miranda* rights,—for support of this conclusion. Petitioner maintains that if he was too drunk to make a valid *Miranda* waiver, he was also too drunk to make a reliable statement and, thus, the statement, "I stabbed him," should have been inadmissible for *any* purpose.

In *Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971), the United States Supreme Court held that although evidence obtained in violation of *Miranda* could not be used in the prosecution's direct case, it could be used for impeachment purposes "provided of course, that the trustworthiness of the evidence satisfied legal standards." Moreover, as stated in *People v. Washington*, 51 N.Y.2d 214, 220, 433 N.Y.S.2d 745, 413 N.E.2d 1159 (1980), "[i]t is clear that the rule applies to any violation of the defendant's rights under the *Miranda* decision (*Oregon v. Hass*, 420 U.S. 714 [95 S.Ct. 1215, 43 L.Ed.2d 570];

*People v. Wise*, 46 N.Y.2d 321, 329 [413 N.Y.S.2d 334, 385 N.E.2d 1262] )."

Although the term "trustworthiness" has yet to be clearly defined by the Supreme Court, it is apparent from cases both prior and subsequent to *Harris*, that any statements sought to be used by a prosecutor for impeachment purposes must be both voluntary and reliable. *See, e.g., Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *People v. Washington, supra*. Furthermore, self-induced intoxication, whether by means of alcohol or drugs, has generally been held not to render a statement invalid *per se* and thus, it will only be excluded if it is found to be either involuntarily given or, even if voluntary, so unreliable that it does not warrant belief. *People v. Adams*, 26 N.Y.2d 129, 309 N.Y.S.2d 145, 257 N.E.2d 610, *cert. denied*, 399 U.S. 931, 90 S.Ct. 2262, 26 L.Ed.2d 800 (1970); *People v. Schompert*, 19 N.Y.2d 300, 279 N.Y.S.2d 515, 226 N.E.2d 305, *cert. denied*, 389 U.S. 874, 88 S.Ct. 164, 19 L.Ed.2d 157 (1967). *Accord, United States v. Brown*, 535 F.2d 424 (8th Cir. 1976); *United States v. Bernett*, 495 F.2d 943 (D.C.Cir.1974); *Washington v. Downes*, 475 F.Supp. 573 (E.D.Va.1979).

In *People v. Schompert, supra*, (the leading case in New York), the court addressed the question of admissibility of statements made by a defendant who was intoxicated. In that case, the defendant was a chronic alcoholic with a history of psychosis and was intoxicated to an advanced degree when he spoke with the police. Moreover, one of the officers testified that the defendant appeared to be on the verge of delirium tremens at the time. Nevertheless, defendant related to police the details of his crime, the particular property taken and its location. Subsequent investigation and location of the property verified defendant's statements. In passing on the admissibility of those statements, the court recognized a

distinction between statements made under self-induced intoxication and those, regardless of their truthfulness, which are coerced or are the product of police-induced intoxication. Statements which are obtained by means of the latter are automatically excluded despite any other objective evidence of reliability. Those which are made under self-induced intoxication will only be excluded if it can be shown by reference to subsequent events and evidence, that the state of intoxication has risen to the degree of "mania" so as to effect the confessant's "volitional competency" or that the contents of the statements are otherwise inaccurate and unreliable. The court found that defendant's intoxication was self-induced and despite defendant's advanced state of intoxication he was "sufficiently 'in touch with the realities of his situation'" (19 N.Y.2d at 304, 279 N.Y.S.2d 515, 226 N.E.2d 305), to make a reliable confession. Moreover, the court found the accuracy, and hence the trustworthiness, of the statement was amply confirmed by subsequent events.

These principles were again applied in *People v. Adams, supra,* wherein the defendant was under the influence of drugs. In that case, the court found that "the defendant, at the time she made the statements, was not under the influence of drugs so as to impair her ability to resist interrogation." 26 N.Y.2d at 138, 309 N.Y.S.2d 145, 257 N.E.2d 610. The court noted that the record supported the conclusion that the statements were not the result of mania despite the defendant's drugged state nor were they the result of police overbearance. Finally, the court held that the reliability and trustworthiness of the statements were objectively indicated by a comparison of defendant's statements with the physical evidence at the scene of the crime.

■ Thus, where it has been properly found that the statements were not obtained by impermissible means, it is relevant for a court on appeal to look to the contents of the statements and the subsequent events in order to determine the reliability or trustworthiness of the statement and, hence, the propriety of its admission in the trial court. *See, Wolfrath v. LaVallee,* 576 F.2d 965 (2d Cir. 1978).

■ In petitioner's case, the record supports a finding that his statement, "I stabbed him," was not impermissibly obtained and was otherwise trustworthy and reliable. Relying on the holding of the Supreme Court in *Harris v. New York,* the court below determined prior to its admission as required by *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), that petitioner's confession was not coerced or extracted or constitutionally involuntary (*supra* at p. 745). (T. 177). That determination is presumed to be correct (*LaVallee v. Delle Rose,* 410 U.S. 690, 695, 93 S.Ct. 1203, 1205, 35 L.Ed.2d 637 (1973)), and petitioner does not challenge that finding. Thus, the only remaining issue is whether the statement was trustworthy or reliable despite petitioner's self-induced state of intoxication, and, as stated above, this can be determined by reviewing the totality of the circumstances, including the subsequent events.

■ The testimony received both at the hearing and at trial belies any contention that petitioner's state of intoxication had risen to the degree of the "mania" noted in *Schompert,* such that petitioner was, in effect, so drunk at the time that he did not know what he was saying or that his statement was otherwise unreliable. The police testified that although petitioner was apparently intoxicated he was nevertheless able to understand the questions asked of him, his answers were rational and spoken clearly, and he was able to walk out of his apartment with the police without any assistance (T. 24–26, H. 17, 19, 27). Significantly, petitioner testified that he had consumed his last drink approximately six hours before the police came to his apartment (H. 34–35). In addition, petitioner was able to testify at trial concerning the

events of the night in question including his conversation with the police at his apartment (T. 164–69, 179–82).

Moreover, the reliability of petitioner's statement, "I stabbed him," is amply confirmed by the fact that petitioner admitted that he had a knife with him that evening (T. 187), and the fact that the police discovered the knife used in the stabbing in petitioner's apartment exactly where petitioner told the police to look for it (H. 11–12, 23). Therefore, taken as a whole, it is clear that petitioner's statement was reliable.

Although the court below suppressed petitioner's second statement, it did not do so on the basis of unreliability. That statement was suppressed because the court found that petitioner was incapable, due to intoxication, of understanding his legal rights and making a knowing and intelligent waiver thereof. However, it must be noted that in New York the prosecution bears a heavier burden of establishing waiver then that required by the United States Supreme Court. *United States ex rel. Laudati v. Ternullo*, 423 F.Supp. 1210, 1215 (S.D.N.Y.1976).

■ In New York, the State must show beyond a reasonable doubt that a defendant understood his rights and knowingly relinquished them and "every reasonable presumption against waiver is to be indulged by the court." *Carvey v. LeFevre*, 611 F.2d 19, 21 (2d Cir. 1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 276 (1980). Thus, because of this heavy burden on the State and the fact that the court must indulge "every reasonable presumption against waiver," it is not inconsistent or error for the court below to have found that petitioner was too drunk to waive validly his *Miranda* rights and yet sufficiently coherent to give a reliable account of recent events.

■ Furthermore, even assuming *arguendo* that it was error to allow petitioner's statement to be used for impeachment, it was harmless error beyond a reasonable doubt. *People v. Crimmins*, 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975). Petitioner admitted that he had a knife with him that evening. Moreover, he did not specifically deny the stabbing but instead relied on the defense of justification, and, the jury was clearly instructed that the statement was to be considered by them solely on the issue of petitioner's credibility. Thus, it cannot be gainsaid that if there was any error, it was harmless. Therefore, the first ground for relief must be denied.

■ Petitioner's second and third grounds for relief must be dismissed because they do not present claims which are cognizable by a federal court under 28 U.S.C. § 2254. An application for a writ of habeas corpus may only be entertained by a federal court on those grounds which indicate that the petitioner is in custody in violation of the United States Constitution or federal laws. 28 U.S.C. § 2254(a). Here, petitioner's second assertion that the prosecution was unable to "find cases to reverse the court's suppression of petitioner's statement" fails to demonstrate any deprivation of petitioner's right to due process. Petitioner's third claim is essentially a request to modify or reduce his sentence due to his poor health. However, such a request, absent the requisite showing under 28 U.S.C. § 2254(a), may only be brought before the State courts. Under the facts here presented, this claim is beyond the purview of this Court.

For all of the foregoing reasons, petitioner's application for a writ of habeas corpus must be, and hereby is, denied in all respects.

SO ORDERED.

the Court off the record and out of the hearing of the defendant and the jury.)

THE COURT: Let the record indicate this is outside the presence of the jury.

I want to refresh your recollection, Mr. Rosenbaum, to the effect that I conducted a Huntley Hearing and I found the statement which was allegedly solicited from this defendant to be not voluntary.

MR. ROSENBAUM: Not voluntary because he was stated to be intoxicated; isn't that right?

THE COURT: Yes, I did not find it in the nature of a Harris situation where you have a situation because of the failure to give the Miranda warnings.

But thereafter — the statement as voluntary but not permissible-on the People's direct case.

In this particular situation I found that the statement was not voluntary and therefore cannot be used by the People for any purpose.

MR. ROSENBAUM: Your Honor, that being so, I take exception to that ruling.

THE COURT: Yes.

MR. ROSENBAUM: However, I would ask the time to get cases on that.

**750**

Davis-defendant-cross 173

THE COURT: Absolutely.

MR. ROSENBAUM: And continue my cross examination.

THE COURT: No problem.

MR. ROSENBAUM: Tomorrow morning.

THE COURT: Considering the hour of the day, no problem.

The Huntley Hearing was a bifurcated hearing wherein the first facet as to the Miranda warnings, I found that in this particular case I did not arrive at that particular point because I found that he was intoxicated.

He was not capable of waiving any rights.

MR. ROSENBAUM: I realize that, your Honor, but at this time the People's position is the net effect of your ruling is to give —

THE COURT: The net effect of the ruling —

MR. ROSENBAUM: Is to give carte blanche to lie on the witness stand, to tell a falsehood to the —

THE COURT: The net effect of this ruling is that the defendant was not capable of making a statement at the time that he allegedly made it, and accordingly the question of perjury doesn't even surface.

The Court found that the man was drunk.

MR. ROSENBAUM: I realize that.

THE COURT: Okay. Check out the law. Thank you.

BACK IN OPEN COURT

THE COURT: Ladies and gentlemen, at this time we stand in recess until tomorrow morning at 10 o'clock, at which time we'll continue with the cross examination of Mr. Davis.

The admonitions I gave you at the outset of the trial:

Not to discuss the case during the course of the trial.

Not to review any account of this trial that may appear in or through any of the media.

Not to visit the scene of the alleged crime or place referred to during the course of the trial.

And report immediately if anyone improperly approaches you in the performance of your jury duty, are all applicable.

Enjoy your day. Return at 10 a.m. tomorrow. Thank you.

(Jury leaves the courtroom.)

MR. ROSENBAUM: Judge, may we approach?

THE COURT: Yes.

June 18, 1980, Wednesday.

Indictment No. 1362 of 1979, Manslaughter in First Degree.

Supreme Court: Bronx County

Trial Term : Part 18

_____

PEOPLE OF THE STATE OF NEW YORK

 -against-

CHARLES DAVIS,

 Defendant.

_____

 Trial continuing before Honorable

 Donald Sullivan, Justice and a jury.

Appearances same as previously indicated.

 Miriam Benson
 Senior Court Reporter

 * * *

COURT OFFICER: We have the jury.

THE COURT: All right. Bring up the defendant.

(Defendant enters.)

THE COURT: People of the State of New York against Charles Davis.

Let the record indicate People's counsel, defense counsel and the defendant are present.

Mr. Rosenbaum, pursuant to your request, have

you come upon any citations pursuant to the particular point you raised yesterday?

MR. ROSENBAUM: No, your Honor. The only statement I can make for the record is that People's position still is that under the law and the facts, that your decision was strictly Miranda decision.

It did not go beyond that.

The People should be allowed to use the defendant's statement.

You found, I believe, purely on a Miranda type situation which I still believe it is within the Harris rationale.

THE COURT: Very good. The Court will indicate that the Court had found that the statement which is set forth on page 10 of the hearing minutes — that is, "I stabbed him," was suppressed in that the Court had found that the police officer, when he arrived at the particular location was armed with certain facts, vis-a-vis that the individual who had stabbed the deceased was located in this apartment which was immediately adjacent to the scene of the crime.

That when the police officer entered and posed a question as he did, it amounted to custodial

interrogation and the response thereof was, therefore, a statement or a response without the defendant being made aware of — without the Miranda warnings made available to him.

Accordingly, it was suppressed.

The Court does not find that the statement was coerced, forced, and/or extracted from the defendant, rising to the constitutional level of involuntariness.

The other statement which resulted in the recovery of the knife and given after the Miranda warnings were, in fact, made available to the defendant was suppressed in that the Court had found that the People had failed to establish beyond a reasonable doubt, considering the fact that the officer testified as to his visual observations as to intoxication and also the defendant's statement that he had consumed a substantial amount of liquor.

People had not established beyond a reasonable doubt that he had intelligently and voluntarily waived the Miranda rights.

And accordingly said statement was suppressed under the doctrine as enunciated in Harris against

New York, the People will be permitted — on the issue of credibility, the People can utilize the statement that the Court has just referred to, namely, "I stabbed him," if he so chooses during the course of the cross examination of this defendant.

MR. ROSENBAUM: May we approach one moment?

THE COURT: Yes.

MR. BERMAN: Note my exception.

(Assistant District Attorney Rosenbaum and Counselor Berman approach the bench and confer with the Court off the record and out of the hearing of the defendant.)

THE COURT: Bring down the jury.

(Jury enters, and each juror takes his respective seat in the courtroom.)

THE COURT: Want to come up? Want to come up?

(Assistant District Attorney Rosenbaum and Counselor Berman approach the bench and confer with the Court off the record and out of the hearing of the defendant and the jury.)

COURT CLERK: Let the record indicate the sworn jurors have returned to court and appear. The trial resumes.