■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD WRIGHT, Appellant.—Judgment, Supreme Court, New York County, rendered May 26, 1977, convicting defendant on his plea of guilty of manslaughter in the first degree (Penal Law, § 125.20), affirmed. Defendant orally confessed to the crime to the police, subsequently signed a statement which he dictated to the police in which he confessed, and further, repeated his statement to an Assistant District Attorney, which latter statement was tape recorded and embodied in a stenographic transcript. He moved to suppress these statements and, in effect, urged at the *Huntley* hearing that the statements were the product of an illegal detention and of police brutality, i.e., the police threatened him at the police station and broke one of his fingers. Detective Halley testified at the hearing that he and two other officers, all in plainclothes, knocked on the door of defendant's apartment at approximately 10:00 A.M. on April 13, 1976. When defendant answered the knock, the detective displayed his badge, identified himself and his fellow officers and were invited in by defendant. No weapon was drawn. The detective told defendant that the police wanted to question him in connection with an investigation into the death of one Allen Bethea. Defendant was not frisked or searched and agreed to accompany the officers after conferring with his wife. After proceeding the short distance to the nearby 25th Precinct House by car, the detective, his fellow officers having left, went to obtain coffee for defendant and himself. Upon returning to defendant, who had been left alone, the detective, after some amenities, and in the presence of another detective, took the precautionary step of advising defendant of his *Miranda* rights. Acknowledging the advice and indicating his willingness to speak, defendant, without any further interrogation, admitted that he and another had robbed Bethea, but asserted that his accomplice had perpetrated the actual killing of the victim. Defendant was not abused in any manner and at subsequent fingerprinting, none of his fingers were disclosed as broken. Before the Assistant District Attorney arrived, defendant and his wife had a meal and conferred together. This essentially was the People's case at the suppression hearing. Defendant testified that the officers forced their way into the apartment, one of them withdrawing and displaying a gun. His request for a lawyer was met with the response that one would be provided when they got "downtown". He was threatened at the stationhouse and his request for a lawyer there was met with a further threat of a physical beating. His arm was twisted and his middle finger broken by the police. He then made his confession concerning the robbery, but denied implication in the homicide. On cross-examination, the People introduced defendant's motion to suppress, dated January 4, 1977, wherein in the affidavit dictated by him, defendant omitted any reference to the police entering with a drawn weapon, his request at the apartment for an attorney, and his finger being broken. Defendant admitted that he received no medical attention for his broken finger, did not request any medical treatment when arraigned, and did not complain or mention the broken finger to the Assistant District Attorney when he gave

his statement at the precinct to the latter. With respect to his signatures and initials placed on the written *Miranda* warnings and the dictated statement, all of which occurred after the middle finger on his right hand was allegedly broken by the police, defendant explained that he was able to sign because he was ambidextrous. Mrs. Wright testified for the defense and stated that the police did not display a gun and that they stated that they were going to arrest defendant for a homicide. The hearing court, sitting as finder of law and fact, found the police officer to be credible and defendant to be not credible. The court declared: "The defendant alleges that he was approached by the detectives with guns drawn. His wife says she did not see the guns drawn. And during the course of an investigation they asked him to accompany them to the police station * * * he was not in custody at that time. During this course of the examination, he states that he was injured, his finger was broken * * * This alleged brutality * * * seems to exist only in the defendant's mind and not in the minds of the others; nor did he apprise the Court of this alleged brutality. It is apparent from the * * * evidence that the defendant was apprised of his rights and he understood them * * * the defendant knowingly and intelligently and voluntarily waived his rights and made the statements without any coercion from any officer in law enforcement. There was no improper conduct." Accordingly, defendant's motion to suppress was denied. Credibility is determined by the trier of facts who has the advantage of observing the witnesses and necessarily is in a superior position with respect to that aspect than an appellate court which reviews but the printed record (see *People v Cohen,* 223 NY 406, 422-423; Fisch, New York Evidence, § 446). There is no inherent incredibility or improbability in the police testimony that might justify this court on the record herein in doubting the rational basis of the hearing court's findings as to credibility (cf., *People v Dunaway,* 61 AD2d 299, revd 442 US 200). In light of the finding on credibility that defendant was not seized (i.e., arrested) by the police at the apartment and voluntarily cooperated with them by going to the precinct station, it is unnecessary to consider the relevance of circumstances indicating probable cause to arrest. It suffices to merely note that assuming probable cause to arrest, it is not incumbent upon the authorities to effectuate an arrest if the latter alternative may be obviated by voluntary co-operation on the part of a suspect. "There is no war between the Constitution and common sense" *(Mapp v Ohio,* 367 US 643, 657). Concur—Birns, J. P., Lupiano, Ross and Lynch, JJ.

Bloom, J., concurs in a separate memorandum, as follows: While I agree with the conclusion reached by the majority, I would place my concurrence solely on the consensual nature of the custody and questioning. Inasmuch as the record is barren of any indication of probable cause to arrest defendant, the validity of the confession must rest on the holding of the Trial Judge that defendant voluntarily accompanied the detectives to the precinct station and there voluntarily submitted to questioning *(Dunaway v New York,* 442 US 200). The record indicates that when defendant answered the door, he was in his underwear. The police identified themselves and were invited in. Wright was told that the police were conducting an investigation into the death of Bethea and requested Wright to accompany them to the police station. That Wright did not supinely yield to authority is manifest from the fact that he conferred with his wife before agreeing to do so. When he went into the bedroom to dress he was not accompanied by a police officer, nor was he frisked when he re-entered the room in which the police had remained. He was not handcuffed on the ride

to the station house. In short, there was ample basis for the trial court's holding that he was not then in custody. Nor was the treatment accorded him at the precinct that normally accorded to a person arrested. While, clearly, it would have been better for the trial court to permit a delineation upon the record of the circumstances which prompted the police to seek to question defendant, the failure to do so was not fatal in light of defendant's consent to accompany the officers to the police station.