THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY STROMAN, Appellant.

First Department, December 3, 1981

**APPEARANCES OF COUNSEL**

*Susan Manca* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Robert M. Carmen* of counsel *(Joyce P. Adolfsen* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

LUPIANO, J.

The critical issue on this appeal is whether the testimony of the police officers is incredible as a matter of law and represents a prevarication tailored to nullify constitutional objections. Both the Justice presiding over the suppression hearing and the jury at trial, as finders of fact, found the police officers to be credible witnesses and conversely found the defense version of the seizure of the two weapons — a gun and a knife, to be not credible.

Police Officer Leon testified that he and Officer Tall were confronted by two women at 6:45 P.M. on September 11, 1978, one of whom identified herself as Evelyn Eley and claimed that she had just escaped from being held prisoner by a man in his room at the Penn View Hotel around the corner. Exhibiting bruises on her face which did not appear to the officer to be new, she related that she was beaten by the man because he wanted her to engage in prostitution for him. She identified the other woman as a relative and asked police to help her get her things from the room and to arrest the man. When asked, she declared that the man was known to carry a gun. The officers "radioed in", followed the woman to the hotel and ascertained that room 309 was registered to the defendant which fact was theretofore represented to them by Ms. Eley. The four went to the room. Officer Tall and the other woman stood down the hall while Officer Leon stood behind Ms. Eley as she knocked on the door. She identified herself by her nickname "Coffee" and defendant partially opened the door some 5 to 6 inches wide from the bed in which he was resting. The head of the bed was against the same wall as the door and was some 2 inches from the doorknob enabling defendant to open the door from the bed. Defendant was holding onto the doorknob with his right hand while Officer Leon who had moved Ms. Eley to the side was directly in front of the partially opened door with his hand on the door. The uniformed officer identified himself as a police officer and requested to speak to defendant. Defendant responded with a request to close the door so he could get dressed. Officer Leon directed defendant to get dressed with the door open to which procedure defen-

dant objected. At this point in the brief conversation, Officer Leon noticed that defendant in rolling over to answer the door had pulled the covering sheet and blanket with him exposing a gun and an open gravity knife on the right side of the bed. Officer Leon alerted his partner that defendant had a gun, drew his own weapon and pushed the door fully open. Officer Leon further testified that the room was illuminated by a light source within the room. The illumination was provided according to Officer Leon by light coming in a window with the shades up and a ceiling light. He described the room as "a small room," approximately 10 by 12 feet. Both officers now entered the room, seized the weapons, and arrested defendant. Officer Tall searched the clothes defendant was putting on. The police did not search any other part of the room.

Officer Tall corroborated Officer Leon's story. He testified that the room was illuminated by medium light with most of the light coming from the hallway. Inferentially this supported Officer Leon's statement that the room also was illuminated by a light source from within. The proximity of the bed to the door and the size of the room when viewed in conjunction with the recollection of the police officers as to the degree of illumination within the room and the sources of that illumination are telling circumstances. It is important to note that Officer Leon's testimony as to the light source was not contradicted by Officer Tall. Tall never testified that the room was illuminated *only* by light from the hallway.

"Credibility is determined by the trier of facts who has the advantage of observing the witnesses and necessarily is in a superior position with respect to that aspect than an appellate court which reviews but the printed record (see *People v Cohen,* 223 NY 406, 422-423; Fisch, New York Evidence, § 446). There is no inherent incredibility or improbability in the police testimony that might justify this court on the record herein in doubting the rational basis of the hearing court's findings as to credibility" *(People v Wright,* 71 AD2d 585, 586). "In evaluating testimony we should not discard common sense and common knowledge. This concept is well stated in section 649 of 22 New York Jurisprudence, Evidence, as follows: 'The rule is

that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case'" *(People v Garafolo,* 44 AD2d 86, 88). "There is no war between the Constitution and common sense" *(Mapp v Ohio,* 367 US 643, 657).

■ The testimony of the police officers at the suppression hearing and at trial is not manifestly untrue, physically impossible, contrary to experience, or self-contradictory.

■ At the end of the *Sandoval* hearing, the court ruled that defendant could be cross-examined respecting a 1975 conviction for sale of a controlled substance in the fifth degree, a 1976 conviction for attempted possession of a weapon in the third degree and a 1975 conviction for petit larceny, but precluded cross-examination regarding a 1978 conviction for drug possession. On appeal defendant contends that the court committed prejudicial error in permitting cross-examination on the attempted possession of a weapon and larceny convictions. In weighing prejudice to the defendant's right to a fair trial, an important consideration is whether the defendant would be the only available source of material testimony in support of his defense *(People v Sandoval,* 34 NY2d 371, 378). Here Evelyn Eley ("Coffee") testified fully about defendant's version of the events. The mere fact that defendant's prior criminal act underlying his 1976 conviction for attempted possession of a weapon is similar to the instant offense with which he was charged does not require its immediate preclusion (see *People v Rahman,* 62 AD2d 968, affd 46 NY2d 882). Defendant has not met his burden of demonstrating that the prejudicial effect of the admission of evidence of his 1976 conviction for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion (see *People v Sandoval, supra,* at p 378). There is nothing in the record to indicate that the court did not actually balance the probative worth of the impeaching material against the risk that it might be taken as an indication of a propensity

to commit the crime charged and the fear that its admission might unfairly deter him from testifying at trial. In brief, there is no showing that the Trial Judge misapprehended or overlooked his discretionary obligation or refused to apply it in ruling on defendant's *Sandoval* motion (see *People v Rahman,* 46 NY2d 882, *supra*).

The same observations equally apply to defendant's claim respecting his prior larceny conviction. Defendant was not deprived of a fair trial.

Accordingly, the judgment of the Supreme Court, New York County (CROPPER, J., at suppression hearing; FITZER, J., at *Sandoval* hearing, trial and sentence), rendered on April 28, 1980, convicting defendant after a jury trial of criminal possession of a weapon in the third degree should be affirmed and the case remitted to the Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (subd 5).

MURPHY, P. J., BIRNS and ROSS, JJ., concur with LUPIANO, J.; SANDLER, J., concurs in the result only.

Judgment, Supreme Court, New York County, rendered on April 28, 1980, unanimously affirmed, and the case remitted to the Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (subd 5).