■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN PAULI, Appellant.—Judgment, Supreme Court, New York County (Myriam J. Altman, J.), rendered May 20, 1985, after jury trial, convicting appellant of grand larceny in the second degree, criminal possession of stolen property in the first degree and unauthorized use of a vehicle in the third degree, and imposing sentence thereon, is reversed, on the law, and as an exercise of discretion in the interest of justice, and the case is remanded for a new trial.

The essential facts in this case are undisputed. Appellant emigrated with his mother from Ecuador in 1980, at the age of 16. After graduating from high school, he began working full time at a jewelry import company while attending Hunter College. At the time of the incident appellant was 21 years of age, still employed full time, and attending Control Data Institute in midtown Manhattan where he studied computer programming.

On the evening of January 24, 1985, appellant, after finishing work, started school as usual at 6:00 P.M. At about 8:30 P.M. he and three fellow students took a taxi to the restaurant at 8th Avenue and 20th Street. At the restaurant appellant drank two "jumbo-sized" margaritas.

At about 9:45 P.M. appellant and his companions left the restaurant and hailed a yellow medallion cab driven by Claudio Adames. Mr. Adames pulled over and allowed three members of the group to enter his cab, but asked them to wait for

him for a few minutes while he purchased something to drink at a store in the vicinity. He left the cab with the motor running. Appellant immediately got behind the wheel and drove off. He testified at trial that he didn't know why he did it, that he had no plans to keep the cab permanently, and in fact had no plans regarding it at all.

Appellant drove his companions back to school on 42nd Street, where they signed out on their attendance sheets, and he then drove home to his apartment in Queens. He testified that he lay down for a while, feeling drunk, and around midnight realized what he had done, and decided to drive back to Manhattan and to leave the cab parked in the vicinity of where he had taken it. On his way downtown from the 59th Street Bridge, at about 1:00 A.M., appellant lost control of the cab, and drove onto the sidewalk, causing no noticeable damage to the cab. Appellant panicked and ran from the cab, but two police officers riding in a van, who happened to see the incident, commanded him to halt. Appellant told the officers that he "stole" the cab. In response to their inquiry as to how he stole it, appellant said, "The guy left it running; the guy went in for a pack of cigarettes and left it running so I took it." Both of the police officers noted that appellant had alcohol on his breath at the time of his arrest.

Penal Law § 155.35, as it read prior to the 1986 amendment raising the value threshold to $3,000, stated: "A person is guilty of grand larceny in the second degree when he steals property and when the value of the property exceeds one thousand five hundred dollars." Penal Law § 155.05 (1), defining larceny, states as here pertinent: "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof."

Penal Law § 155.00 (3) states: "To 'deprive' another of property means (a) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him, or (b) to dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property." Penal Law § 155.00 (4) similarly provides as here pertinent that to "appropriate" property means "(a) to exercise control over it * * * permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit".

We find that the evidence presented a very close issue with respect to the necessary element of appellant's intent to "deprive" or "appropriate" the cab with the permanence or for the extended period set forth in the relevant statutory provisions defining the elements of larceny. It is conceded that under the facts in this case, if appellant's taking of the cab did not constitute a larceny, appellant would not be guilty of criminal possession of stolen property. In this regard we observe that there was no evidence of premeditation, or the use of a lookout, or possession of tools associated with car theft, or any suggestion that appellant intended to strip the cab of parts or to sell it under circumstances that would deprive the owner permanently or for an extended period of time of its use.

In the light of the evidence, which in our view presented a very close issue for the jury with respect to intent on the two felony counts, we reverse on account of significant prejudicial arguments raised by the Assistant District Attorney during summation. On several occasions the Assistant District Attorney presumed to instruct the jury on the law, and did so inaccurately or misleadingly in the context of the facts presented. He urged that if appellant did not intend to keep the cab, he could still be guilty of larceny and criminal possession of stolen property; that the jurors should not be intimidated by the law but should follow their common sense; that permanently depriving anybody of anything is not an included element of possession of stolen property; and that the appellant's intent to benefit himself is the controlling standard.

On several occasions during cross-examination of the appellant, the Assistant District Attorney seemed to be attempting to confuse the issue of the appellant's intent to keep the cab as it related to whether a larceny had occurred. Appellant readily admitted in response to leading questions that he "stole" the cab, while insisting that he never intended to keep it beyond a few hours, and that he was in the process of returning it when the accident occurred. During his summation, the Trial Assistant repeatedly and unfairly capitalized on the appellant's answers as purportedly constituting binding admissions as to the appellant's intent, thus foreclosing from the jury's consideration the sole and determinative issue in the case. The following examples are illustrative:

"ADA: The evidence shows you that it was stolen because he stole it. The cab was stolen property because he took it without permission or authority, and he knew what he was doing.

"DEFENSE COUNSEL: Objection.

"ADA: He intended to benefit himself.

"DEFENSE COUNSEL [probably THE COURT]: The jury will evaluate the evidence.

"DEFENSE COUNSEL: Your Honor, again, on the legal point, the district attorney is instructing the jury on the law.

"THE COURT: I understand your objection.

"ADA: The evidence shows that he impeded its recovery by taking it, driving it, by exercising control over it and using it; and even if you believe he was going down there to drop it off, he's still impeding recovery of that car because no one is going to know where to find it * * *

"ADA: He told you exactly that on cross-examination. You can have it read back to you that he knew it was stolen.

"DEFENSE COUNSEL: Objection. Objection.

"THE COURT: Overruled. The jury's evaluation of the testimony is what controls.

"DEFENSE COUNSEL: I just object to the district attorney instructing the law.

"THE COURT: I understand.

"ADA: Even if he hadn't admitted he knew it was stolen which he did, using your common sense and applying it to the evidence, you know that he knew it was stolen. After all, he stole it. This isn't a case where he got the cab from somebody else who he wasn't sure had any permission to have it. He, himself, kept it and used it that night. Obviously, anyone in his position would have known that cab was stolen just as he, himself, knew it and admitted that he knew it.

"You also know that he knew the cab was stolen because when he was stopped by the police, he tells two police officers, 'I stole it.'

"The defendant knew what he did. He knew he stole it * * *

"ADA: The defendant says, 'I stole the cab.'

"The defendant, himself, used the word 'steal' not once but twice. Defense counsel wants you to believe that's irrelevant. Well, analyze it. The defendant knows that he's been caught in the act of possessing a cab which he, himself, stole.

"DEFENSE COUNSEL: Objection.

"THE COURT: Jury's evaluation is what controls."

As noted previously, these arguments and instructions, among others, to the jury by the Assistant District Attorney

were inaccurate and prejudicial, particularly when viewed in the context of questions asked by the jurors during deliberation reflecting their confusion on the legal elements of the crimes charged. The Trial Judge's sustaining of many of defense counsel's objections, and several admonitions that the jury should get the law from the court, were insufficient to undo the prejudice resulting from the Assistant District Attorney's inappropriate legal instructions and misrepresentations of the evidence as it applied to the appellant's intent on the felony counts.

In an apparent attempt to establish beyond question appellant's intent to steal the car as defined in the Penal Law, and possibly to demonstrate that any inappropriate comments made during summation by the Assistant District Attorney should be treated as harmless error in the light of what they contend to be a very strong case, the People emphasize on this appeal appellant's admissions during the trial, and his statements to the police at the time of his arrest, and shortly thereafter, that he "stole" the cab. They argue that while appellant "may not have been familiar with the legal definitions of Penal Law § 155.00, he was a 21-year-old student with two years of college, who surely knew the difference between 'steal' and 'borrow'." We find it a sufficient answer to this argument that one common definition of "steal" is simply "to take the property of another." (See, e.g., Webster's New Collegiate Dictionary.) That is precisely what appellant did, as conceded, and in addition without the consent of the owner, but that does not under any stretch of argument constitute an admission of stealing or larceny as defined in the Penal Law. (Compare, Penal Law § 165.05, defining unauthorized use of a vehicle in the third degree.) We also observe that in the People's brief, the appellant's taking of the cab is referred to as a "robbery", as if to demonstrate the ease with which common words like "steal" and "robbery" can be misused even by the experts.

Although appellant's guilt of the count charging unauthorized use of a vehicle in the third degree was clearly established by the evidence, and is undisputed on this appeal, we believe that the issues on retrial would be distorted if the jury could not consider the possiblity of his guilt on that count, and we accordingly reverse appellant's conviction on that count as an exercise of discretion in the interest of justice. Concur—Sandler, J. P., Milonas and Rosenberger, JJ.

Sullivan and Ross, JJ., dissent in a memorandum by Ross, J., as follows: After reviewing the trial transcript, I would

affirm the judgment convicting the defendant of the crimes of grand larceny in the second degree (Penal Law § 155.35), criminal possession of stolen property in the first degree (Penal Law § 165.50), and unauthorized use of a vehicle in the third degree (Penal Law § 165.05), since I find that overwhelming evidence supports the jury's verdict. Therefore, if any error was committed by the prosecutor, it was harmless, in view of the fact that there is no "significant probability * * * that the jury would have acquitted the defendant had it not been for the error or errors which [the majority contend allegedly] occurred" (People v Crimmins, 36 NY2d 230, 242 [1975]).

In the majority writing, they state that there was "a very close issue with respect to the necessary element of [defendant's] intent to 'deprive' or 'appropriate' the cab with the permanence or for the extended period set forth in the relevant statutory provisions defining the elements of larceny". I disagree.

I find no close intent issue herein, since the trial transcript is replete with evidence that defendant intended to "deprive" or "appropriate" the cab permanently or for an extended period of time. A few illustrations of this evidence are, as follows:

1. The majority's own recitation of the facts indicates that the defendant had possession of the subject cab for more than three hours—from about 9:45 P.M. to about 1:00 A.M.—when he abandoned it;

2. Furthermore, the majority's recitation of the facts indicates that defendant drove the cab great distances, such as back and forth from New York County to Queens County;

3. During his direct examination, by his own counsel, defendant admitted that, after he parked the cab near his home in Queens, he *took* the keys from the cab with him into his house; and

4. Also, defendant admitted that, besides the keys, he *took* the cab driver's license from the driver's wallet, which had been left in the cab, and his purpose in taking the license was to provide himself with "some kind of protection [note: defendant also admitted he did not have his own driver's license] if I got caught. I remember taking it and putting it in my back pocket". Significantly, New York City Transit Police Officer John Dolan (Officer Dolan) testified that, when he apprehended and arrested defendant, he recovered from defendant's right hand one half of the cab driver's license.

The majority states that, subsequent to defendant being taken into custody, Officer Dolan and New York City Police Officer Joseph Culbert (Officer Culbert) "noted that [defendant] had alcohol on his breath at the time of his arrest". Examination of the trial testimony of both of these officers indicates that neither one of them believed that defendant was intoxicated. In pertinent part, Officer Dolan testified "[w]hen I spoke to [defendant] I smelled alcohol on his breath. He didn't appear to me to be intoxicated. His speech wasn't slurred or he wasn't staggering. He appeared to be in control of his faculties", and the defendant was coherent. In addition, Officer Culbert testified, in pertinent part, as follows:

"BY MS. CONWAY [defense counsel]: Q. Now is it your testimony that at the time you filled out the arrest report in this case, you wrote on that report that the defendant was intoxicated at the time of his arrest?

"[Officer Culbert]: A. Yes. Based on—smelling alcohol on his breath and with the choices I had in that captioned area [of the report], I felt I should make some note of alcohol involved".

However, earlier, Officer Culbert explained in his testimony that, although he had made the intoxication entry, *supra,* defendant "was alert and his reflexes were good. He was walking with no trouble at all", and he was coherent and speaking clearly. Finally, Officer Culbert testified that he did not charge defendant with drunk driving, since he "seemed to be in full control of his body and was alert and speaking clearly and seemed to understand everything I said, [so] I didn't feel that he was, in fact, drunk—a drunk or could be charged with intox driving".

Moreover, the majority criticizes the prosecutor for "repeatedly and unfairly capitaliz[ing] on the [defendant's] answers as purportedly constituting binding admissions as to the [defendant's] intent, thus foreclosing from the jury's consideration the sole and determinative issue in the case". Upon the basis of defendant's own testimony, and that of Officers Dolan and Culbert, as well as an examination of the prosecutor's summation, I find that the prosecutor made fair comment about defendant's admissions in his summation, and did not misrepresent the evidence.

In the transcript, the following pertinent admissions of the defendant appear. First, Officer Dolan testified that, after advising defendant of his *Miranda* rights, the defendant voluntarily said "I stole the cab from down by 14th Street".

Second, Officer Culbert testified that he also advised defendant of his *Miranda* rights, and thereafter defendant, in answer to Officer Culbert's question, as to how he came into possession of the cab, admitted "I stole it [the subject cab]". Third, the defendant admitted in his trial testimony that he knew he did not have permission to take the cab, and he knew when he took the cab he was stealing it.

The majority also contends that defendant's use of the word "steal" to describe his taking of the cab without the owner's consent did "not under any stretch of argument constitute an admission of stealing or larceny as defined in the Penal Law." This 21-year-old defendant, although a native of Ecuador, graduated from John Brown High School in Queens; completed 2½ years at Hunter College; worked full time for a jewelry importing firm, where he was "in charge of the billing, receiving of merchandise and keeping track of the records, system updates, documentation"; graduated from the Control Data Institute, which taught computer programming; and testified in the English language at trial, without either the benefit of an interpreter, or his making any complaint about understanding questions in the English language. In view of the high level of defendant's education, and his supervisory position in the workplace, I find that the jury could reasonably conclude that the defendant knew the meaning of the significance of the word "steal" when he chose to use it, instead of any other word, to inform Officers Dolan and Culbert what he intended to do when he drove off with the cab. As mentioned, *supra,* the jury found the defendant guilty of the crimes of grand larceny in the second degree and criminal possession of stolen property in the first degree, which crimes contain in their definitions the words "steal" and "stolen".

Unlike the majority, I do not find significant in this case "that there was no evidence of premeditation, or the use of a lookout, or possession of tools associated with car theft, or any suggestion that [defendant] intended to strip the cab of parts or to sell it under circumstances that would deprive the owner permanently or for an extended period of time of its use" (note: the quotation, *supra,* is found in the majority's writing) since, in order to steal the subject cab, the defendant did not have to do any one of the things cited, *supra,* by the majority. As the defendant admitted, all he had to do to steal this cab was get into "the front seat, and I took the cab".

A unanimous Court of Appeals held in *People v Zorcik* (67 NY2d 670, 671 [1986]) that "[k]nowledge that property is

stolen may be shown circumstantially, such as by evidence of recent exclusive possession, defendant's conduct or contradictory statements from which guilt may be inferred *(People v Reisman,* 29 NY2d 278, 285-286, *cert denied* 405 US 1041; *People v Von Werne,* 41 NY2d 584, 590)". *People v Zorcik (supra)* involved a stolen car, and, in that case, the Court of Appeals affirmed a jury verdict convicting defendant of the crime of criminal possession of stolen property in the first degree, which, as mentioned, *supra,* was one of the crimes of which the defendant was found guilty in the instant case. Applying the holding of *People v Zorcik (supra)* to the facts of this case, I find, based upon, *inter alia,* defendant's recent exclusive possession of the cab, his conduct in driving the cab for long distances and taking the cab driver's keys and license, and his admissions that he stole the cab, that "the evidence was sufficient for the jury to infer that defendant knew the car he possessed had been stolen" *(People v Zorcik, supra,* at 671).

Apparently the majority has overlooked the principle that "[i]n reviewing the evidence [as an appellate court] we are obliged to do so in the light most favorable to the People *(People v Kennedy,* 47 NY2d 196) bearing in mind that credibility is a matter to be determined by the trier of * * * facts *(People v Parks,* 41 NY2d 36, 47)" *(People v Malizia,* 62 NY2d 755, 757 [1984]). Needless to say, the jury was the trier of facts and not the majority. We have repeatedly held that the trier of facts is in the best position to determine credibility, since it observes the witnesses in the crucible of the courtroom *(see, for example, People v Wright,* 71 AD2d 585, 586 [1st Dept 1979]; *People v Stroman,* 83 AD2d 370, 372 [1st Dept 1981]; *People v Siu Wah Tse,* 91 AD2d 350, 352 [1st Dept 1983], *lv denied* 59 NY2d 679 [1983]; *People v Velazquez,* 104 AD2d 761, 762 [1st Dept 1984], *affd* 64 NY2d 1118 [1985]; *People v Cesar,* 111 AD2d 707, 710 [1st Dept 1985]). I find particularly applicable herein these words that we wrote in *People v Wright (supra,* at 586): "Credibility is determined by the trier of facts who has the advantage of observing the witnesses and necessarily is in a superior position with respect to that aspect than an appellate court which reviews but the printed record (see *People v Cohen,* 223 NY 406, 422-423; Fisch, New York Evidence, § 446)".

Furthermore, a unanimous Court of Appeals commented in *People v Carter* (37 NY2d 234, 239 [1975]) "[g]enerally and whenever possible, the fact-finder * * * should be able to see and hear the witness *(Schricker v City of New York,* 35 AD2d

743), since the appearance, attitude and demeanor of a witness upon being questioned and while before the court are matters to be taken into consideration in testing veracity and in determining the weight to be accorded his or her testimony *(Matter of Nowakowski,* 284 App Div 655, 657, affd on rearg 1 AD2d 250, 252, affd 2 NY2d 618). Indeed, the opportunity of observation often affords the most accurate method of ascertaining the truth *(Boyd v Boyd,* 252 NY 422, 429)".

It is claimed by the majority that the prosecutor allegedly prejudicially misled the jury by inaccurately and presumptuously instructing them on the law. Based upon my examination of the prosecutor's summation, I find no merit to this claim, since the experienced trial court gave prompt curative instructions, which cured any error in this respect on the part of the prosecutor. In fact, on a number of occasions the court specifically informed the jury that it would instruct on the applicable law.

Moreover, we find that the trial court in its instructions made it crystal clear to the jury that defendant could only be found guilty of possession of stolen property if the jury found that defendant intended to steal the cab. Incidentally, defense appellate counsel concedes, at pages 29-30 of the appellant's brief in this court, "the court initially charged the jury correctly with regard to grand larceny, including the definition of 'deprive', which spelled out the need for an intent to deprive an owner of his property permanently."

Accordingly, this judgment should be affirmed.