■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE FALCIGLIA, Appellant.—Judgment of the Supreme Court, Bronx County (Bernard Fried, J.), rendered on April 22, 1988, convicting defendant, following a jury trial, of criminal possession of a weapon in the third degree and sentencing him, as a second violent felony offender, to an indeterminate term of imprisonment of from 2½ to 5 years, is affirmed.

Following a combined *Mapp-Huntley* hearing held in connection with defendant's motion to suppress, the trial court denied the request for suppression of the weapon but granted the motion to suppress his statement. In that regard, the fact finding of the court, which had the opportunity to observe the demeanor of the witnesses and hear their testimony, should be accorded great weight *(see, People v Prochilo,* 41 NY2d 759). Under the circumstances herein, there is simply no basis to substitute this court's determination of the facts for that of the trial court, as set forth in its well-reasoned opinion. We also disagree with the assertion that defendant was entitled to a missing witness charge since, contrary to the conclusion of

the dissent, there is no indication that the individual in question was either available to the prosecution or under its control *(People v Gonzalez,* 68 NY2d 424). Concur—Kupferman, J. P., Sullivan, Milonas and Smith, JJ.

Carro, J., dissents in a memorandum as follows: Appellant has raised two claims of error which, I believe, require a reversal of the judgment convicting him, after trial, of criminal possession of a weapon in the third degree.

At 9:00 P.M. on July 17, 1987, Police Officers Carlos Aviles and Joseph Treese, members of the Bronx DWI Task Force, were on duty in a marked patrol car in the vicinity of Edgewater and Seneca Avenues, looking out for drunk drivers and other traffic violators.

Aviles contended that he saw appellant, who was driving a car occupied by himself and a female passenger, "swing a wide [left] turn." Treese testified that after appellant turned "slowly" onto Seneca Avenue, he pulled over to the curb, "bumping" it in the process, with sufficient force to attract attention. Treese claimed that he turned on his turret lights in order to pull appellant over and investigate whether he was intoxicated or having difficulty with his car. Aviles, however, recalled that it was only after Treese flashed the turret and put on the siren that appellant pulled over, bumping the curb in the process.

Aviles described Seneca Avenue as a four-lane street with two lanes to turn onto, one of which was a passing lane. Ultimately, at trial, he was forced to concede that Seneca is a two-, not a four-lane street. Notably, Aviles did not testify as to the wide turn at the Grand Jury, although at the suppression hearing he contended that the allegedly wide turn and subsequent curb bumping were "signs of DWI." However, Aviles conceded that the bump was not necessarily indicative of a DWI. Both officers reaffirmed, on more than one occasion at the hearing, that appellant made an illegally wide turn, because, while turning, he crossed over into the right lane. The officers did, however, acknowledge that appellant had not been speeding and did not disobey any stop signs.

Once the car was stopped, the officers approached from either side. Treese, who had approached from the driver's side, claimed that he instructed appellant to produce his driver's license, registration and insurance papers. Treese contended that appellant, whose eyes were "watery and glassy", appeared to have difficulty understanding the command, whereupon he ordered appellant out of the car, to further examine and observe him for signs of intoxication.

Treese admitted that there was no odor of alcohol on appellant's breath. He also acknowledged that appellant promptly produced his papers. Treese could not, however, recall whether appellant was inside or outside the car when the papers were produced. Treese did, however, characterize appellant and the driver's side of the car as "neutralized", although he stated he had initially been concerned about his safety after the stop.

Meanwhile, Aviles ordered the passenger, a "known" prostitute, to keep her hands on the dashboard or to "freeze", while, aided by a flashlight, he observed the prostitute and the interior of the car. This was in contrast to his Grand Jury testimony, where he stated that the car was illuminated by a streetlamp. He acknowledged that he was looking for weapons, beer bottles or wine bottles. He commented that he was "always afraid for [his] safety." Aviles initially testified that appellant was still in the car at this time, however, after a recess, he changed this testimony. At the point of Aviles' examination, appellant was not under arrest for any violation or crime.

Aviles claimed he observed the butt of a gun in plain view on the driver's side of the car; later he contended that he saw the entire gun. He also gave conflicting testimony as to the location of the gun, asserting at different times that he recovered it from the floor of the car under the driver's knee area, on the left near the driver's door, and in between where the driver's feet would be.

Appellant was arrested but not charged with either Vehicle and Traffic Law violations or DWI. Curiously, the prostitute, who was repeatedly referred to during the proceedings as a "known" prostitute, was released. Moreover, although there was testimony that Aviles interviewed the prostitute, the police report did not contain her statement. In addition, Aviles conceded at the hearing that he had changed the time of the arrest in his memobook, from 2205 to 2105; Treese admitted that it was "possible" that he had changed the time in his memobook as well.

Photographic evidence was introduced by defense counsel demonstrating that Seneca Avenue has but *two* lanes of traffic, one in each direction, and no lane lines on either side of the street, contrary to the testimony of the officers. Appellant also gave testimony to this effect, noting that there would only have been one lane for him to turn onto because there were cars parked in the parking lane. Appellant further testified that he had not been drinking that evening.

The hearing court credited the testimony of the officers and declined to suppress the gun.

At trial, the testimony of the officers included similar and new inconsistencies relating to the material facts both prior and subsequent to the stop. Both Treese and Aviles ultimately conceded on cross-examination that Seneca Avenue was a two-lane street, with one northbound and one southbound traveling lane. Aviles, in an incredible attempt to explain the contradiction to his hearing testimony, said that if the two parking lanes were included, Seneca Avenue could be considered a four-lane street.

During the trial, Aviles and Treese testified to additional facts regarding the "known" prostitute, whom, immediately before jury selection, the prosecutor indicated to the court and counsel he intended to call as a witness. Of particular interest is that Aviles testified that he "decided not to place her under arrest" in the exercise of his discretion. He said that this was because she was not carrying a purse, and the gun was found in the car. In addition, he was forced to admit that he did not bother to record her name and address; he stated that because the woman was a "known" prostitute, he could get any information he needed from the precinct Prostitute Unit.

Following the testimony of the police witnesses, the prosecutor rested, without calling the "known" prostitute. Defense counsel requested a missing witness charge. The prosecutor argued in opposition that he had asked the officers three to four weeks before the trial to locate her; he did not explain the apparently inconsistent statement he made at the beginning of the trial proceedings that he intended to call her. The court declined to issue the charge.

First, as to the suppression issue, it is the rule that while questions of credibility are primarily for the hearing court, and its determination is generally entitled to great deference on appeal, reversal is warranted where the fact findings are manifestly erroneous or unsupported by the record. *(People v Burke,* 146 AD2d 706; *People v Cesar,* 111 AD2d 707, 710; *People v Garafolo,* 44 AD2d 86, 88.) Thus, it is not simply our province, but our duty to set aside the hearing court's findings and "refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections." *(People v Garafolo,* 44 AD2d, *supra,* at 88.)

The case herein mandates reversal of the hearing court's determination. The record is bare of any objective evidence whatsoever of criminal activity—including drunk driving—at

the time of the stop. *(People v Sobotker,* 43 NY2d 559, 563-564.) The photographic evidence, appellant's hearing testimony, and finally, the reluctant concessions at trial of both Officers Treese and Aviles, establish that Seneca Avenue, onto which appellant turned, was a two-way street with but one traveling lane in each direction. Therefore, it would have been physically impossible for appellant to make an illegally wide left turn, unless he hit the parked cars in the parking lane. Most likely, the reason Aviles did not mention the wide turn at the Grand Jury is because it did not happen. The officers' refusal to recant their patently tailored testimony that Seneca Avenue was a four-lane street, even when presented with the photographs at hearing, underscores their incredibility, as do their alterations of the memobooks.

Without the fictitious wide turn, Aviles and Treese are stripped of any valid reasons to have effectuated a seizure of appellant. *(Delaware v Prouse,* 440 US 648, 653, 662-663; *People v Ingle,* 36 NY2d 413, 416.) The evidence here does not show reasonable suspicion of any Vehicle and Traffic Law violation or other offense prior to the turn *(supra,* at 420; *cf., People v McLaurin,* 70 NY2d 779, 780-781 [speeding]; *People v Burke,* 146 AD2d, *supra,* at 707 [defendant asleep while vehicle parked in a manner obstructing traffic on one-way street with engine running]; *People v Villanueva,* 137 AD2d 852, 853 [passing a bottle and drinking while driving]).

Furthermore, the curb "bump" cannot be construed as justifying the stop, because as Aviles admitted, this occurred after Treese activated his lights and sirens, when appellant was already seized. *(People v Sobotker,* 43 NY2d, *supra,* at 565; *Delaware v Prouse, supra; People v De Bour,* 40 NY2d 210.) Indeed, even Aviles acknowledged that a curb "bump" would not even have been indicative of a DWI—if it was, thousands of people who park by the "touch" method would be subject to police action.

Although it is clear that the gun recovered as a result of the unlawful stop must be suppressed, it bears comment that Aviles' statement that he was always afraid for his safety would not have justified a search in any event. As this court has recently held in *People v Howard* (147 AD2d 177, 181), any "alleged apprehension or fear felt by an officer must be reasonable under the circumstances." (Citing *People v Santiago,* 64 AD2d 355, 361; *see also, People v Guzman,* 116 AD2d 528, 530.)

Upon a review of the record of the suppression hearing, particularly when juxtaposed with the relevant testimony at

trial, it is readily apparent that this matter is appropriate for exercise of this court's interest of justice jurisdiction. *(People v Tucker,* 150 AD2d 177.) Accordingly, the gun should be suppressed and the indictment dismissed.

Moreover, irrespective of the suppression issue, the trial court committed reversible error when it refused to issue a missing witness instruction upon defense counsel's request to charge. The People were uniquely able to produce the "known" prostitute, whose testimony would surely have been material and noncumulative.

Under the circumstances of this case, it is clear that the "known" prostitute was available to, and under the control of the prosecution. *(People v Gonzalez,* 68 NY2d 424, 428-429.) Aviles, who testified that he decided not to arrest her in the exercise of his discretion (despite the legal presumption that a gun found in an automobile is possessed by *all* persons occupying the automobile at the time the weapon is found, and the possibility that it could well have belonged to the prostitute [Penal Law § 265.15 (3); *People v Lemmons,* 40 NY2d 505, 510]), stated that in addition to the fact that she was "known" to the police, he could get her name and information from the precinct Prostitute Unit. Thus, although he did not record the name and address of this witness to the events in question on the police report, it is clear that she was considered locatable and within their ability to physically produce. *(Supra.)*

This theory gains support from the prosecutor's statement, prior to jury selection, that he had intentions of calling the "known" prostitute who was the passenger in appellant's car. Such a comment was clearly indicative of a belief that she would have given testimony favorable to the People's case. *(People v Gonzalez, supra,* at 428; *People v Valerius,* 31 NY2d 51, 54-55.) The prosecutor's later comments regarding failed attempts to find her three to four weeks earlier seem particularly disingenuous when viewed alongside his comments at the beginning of the trial proceedings.

Moreover, the "known" prostitute should be considered under the control of the People in this case. She was not a suspect, and, in fact, had essentially been relieved from any potential criminal liability by Aviles. The argument by the People on appeal that "there is nothing inherent in the circumstances of this case that would suggest that a known criminal would be favorably disposed to testify for the People or would have been under the influence", is effectively negated by the testimony of Aviles and pretrial comments of the prosecutor.

Furthermore, the "known" prostitute's testimony would have been neither cumulative nor immaterial. *(People v Wilson,* 64 NY2d 634, 636; *People v Wright,* 41 NY2d 172, 176.) Obviously, if there are issues in dispute and there are questions of credibility, "the testimony of the only additional person who was present might [make] the difference." *(People v Rodriguez,* 38 NY2d 95, 101.) Certainly where, as here, "impeaching and uncertainties developed on the cross-examination" of the officers, the "known" prostitute's testimony would not have been cumulative or trivial. *(People v Wright,* 41 NY2d, *supra,* at 176.) Indeed, the "known" prostitute was knowledgeable about the material issues regarding the events leading to the stop, the description of Seneca Avenue, the location of the gun found in the car, and perhaps, to whom the gun belonged. *(People v Paulin,* 70 NY2d 685, 687; *People v Gonzalez,* 68 NY2d, *supra,* at 427.)

Thus, appellant was entitled to the missing witness charge as to the "known" prostitute. Because the court denied the request to charge, appellant's conviction should be reversed and remanded for a new trial.