[601 NYS2d 473]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVID JOHNSON, Respondent.

First Department, August 12, 1993

APPEARANCES OF COUNSEL

*Steven D. Kommor* of counsel *(Jeanne A. Olivo* with him on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for appellant.

*James J. O'Rourke* for respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

The defendant was indicted for criminal possession of a controlled substance in the third and fourth degrees. In response to his motion to suppress physical evidence, a hearing was conducted at which Detectives John Barrett and Edward Clifford testified that they arrived at apartment 61 at 2400 Seventh Avenue on February 20, 1991, in response to an anonymous call informing the police that Michael Thomas, who was known as "Lukeman", a suspect in a shooting, would be found at that location.

As Barrett and Clifford walked toward apartment 61, the door to that apartment opened and Lukeman, whom the detectives knew by sight, began to walk out. The detectives called out "Police. Don't move". The suspect ran back into the apartment and tried to close the door behind him. The detectives ran in after him, and placed him under arrest.

Barrett then noticed the defendant, who was standing in the bedroom doorway. The defendant went into the bedroom, got down on the floor and reached under a baby's crib. Barrett recovered a plastic bag containing 99 vials of cocaine on which the defendant had his hand under the crib. Four hundred and forty-nine dollars was later recovered from the defendant's pocket.

The defendant testified that the detectives pushed the front door of his apartment in, grabbed Lukeman and threw him to the floor. When the defendant came out of a bedroom holding his baby niece, a detective grabbed him and told him to get down on the floor. The defendant first put the baby on a bed and as he turned around, one of the detectives hit him on the head with a gun and threw him on the floor between the bedroom and a hallway. This detective then searched the apartment and returned from the living room with a bag of cocaine. The defendant added that he knew nothing about the drugs, that Lukeman, a friend of his brother, had been in the living room with his brother and other friends while the

defendant remained in a bedroom, and that he was carrying the large sum of money because he was going to enroll in a modelling agency.

The hearing court found the only issue in the case to be the credibility of the defendant's testimony that he did not have his hand on the narcotics. The court stated that "If he didn't have the hand on the narcotics and these narcotics were found in the apartment, I don't think there's any case against this defendant." After noting that the defendant was only 21 or 22 years of age, lived with his parents and other family members in the apartment, and, after twice pointing out that this was the defendant's first arrest, the court, while crediting the detectives' testimony as to the arrest of Lukeman, found the defendant's testimony that he did not actually possess the narcotics credible and granted his motion to suppress.

We reverse. In his pretrial omnibus motion, the defendant sought suppression alleging that "certain property was recovered *from the defendant* which the People intend to introduce at trial" (emphasis added). He contended that the property was seized illegally because the police entered his apartment to make an arrest (of Lukeman) without a warrant, without consent and in the absence of exigent circumstances. In his brief on appeal, defense counsel alleged that the police were required to have a search warrant, in addition to an arrest warrant, to search for their suspect in the apartment and that exigent circumstances did not exist to justify the search. He maintained that the Supreme Court therefore properly granted the defendant's motion to suppress.

Despite the limited nature of the grounds raised in support of suppression, the Supreme Court determined the ultimate factual issue in the case, appropriate only to a finding that the defendant was guilty or not guilty. Whether or not the defendant possessed the cocaine was the issue that was for the jury, not the court, to resolve *(see, People v Washington,* 51 NY2d 214; *People v Daniels,* 37 NY2d 624). By fully crediting the defendant's testimony at the hearing and focusing on the location in which the contraband was found, the dissent ignores the defendant's claim, in his motion to suppress, that the contraband was seized from him, and then proceeds to raise and resolve an issue that was not raised by the defendant in either his motion to suppress or in his brief on appeal. The defendant never contested the propriety of the seizure on the grounds that he was somehow framed by the police nor did he seek resolution of the ultimate issue in the case. Yet,

the Supreme Court, and now the dissent, resolve the issue in his favor.

The record, however, supports the Supreme Court's conclusion that contrary to the defendant's contention, the detectives properly entered the apartment in pursuit of the suspect in a shooting, who was known to them by sight (see, People v Burr, 70 NY2d 354, cert denied 485 US 989; People v Williams, 181 AD2d 474, lv denied 79 NY2d 1055; People v Cartier, 149 AD2d 524, lv denied 74 NY2d 737, cert denied 495 US 906). Once that suspect was lawfully apprehended, the only issue contested by the defendant, the police were further justified in conducting a security check of the apartment (see, Maryland v Buie, 494 US 325; People v Smith, 179 AD2d 597, lv denied 79 NY2d 1008; and see, People v Febus, 157 AD2d 380, appeal dismissed 77 NY2d 835). That check was reasonable and necessary to dispel the detectives' concern for their safety. Again, neither in his motion in support of suppression nor on appeal did the defendant contest the authority for the security check or the extent to which it was conducted. The only issue raised by the defendant was the legality of the police entry into the apartment.

Accordingly, the order of the Supreme Court, New York County (Jerome Marks, J.), entered December 16, 1991, which granted the defendant's motion to suppress certain physical evidence should be reversed, on the law, the motion should be denied, and the matter is remitted to the Supreme Court for further proceedings.

MURPHY, P. J. (dissenting). The defendant was arrested in his home incident to the arrest of one Michael Thomas, otherwise known as "Lukeman". The evidence adduced at the suppression hearing indicated that Thomas, a suspect in a shooting, had been anonymously reported present at the apartment occupied by the defendant and the defendant's parents, siblings and infant niece. Based on the anonymous report, several police officers converged upon the apartment. They did not have an arrest or search warrant, but claimed that Thomas, whom they knew by sight, happened to emerge from the apartment soon after their arrival. He was reportedly pursued back into the apartment by two detectives, one of whom shortly thereafter arrested him, having easily subdued him at gunpoint and placed him, handcuffed, face down on the floor. While the arrest of Thomas was being effectuated, the other detective, Detective Barrett, pursued the defen-

dant into a nearby bedroom; Barrett claimed that, upon seeing the police enter the apartment, the defendant had spun around and lunged for something under a crib in the bedroom. The defendant was immediately seized by Barrett who stated that at the time of the seizure the defendant was grasping for a bag of narcotics which had been lying beneath the crib.

The defendant's account of the seizure was quite different. He stated that the door to his apartment had been forced open by the detectives after Thomas, an acquaintance of the defendant's brother, had opened the door "a crack". At the time of the officers' entry, the 21-year-old defendant had been baby-sitting for his infant niece. Indeed, it was the defendant's testimony that he was holding the infant in his arms when Detective Barrett pursued him and ordered him to the floor. He claims to have responded to Barrett by turning and placing his niece on a bed preparatory to complying with Barrett's command, but that he was nonetheless pistol-whipped by Barrett who then pushed him to the floor. The defendant denied that he reached under the crib or that he was in physical possession of any contraband. He stated that he was first confronted with the contraband that he was charged with possessing only after he had been seized and uniformed officers had swept through the apartment.

In a decision delivered from the Bench, the hearing court granted the defendant's motion to suppress the contraband. Although finding that the detectives had lawfully pursued Thomas into the apartment, the court specifically declined to credit Detective Barrett's testimony that the contraband had been discovered within the defendant's reach. The court stated:

"Now the issue in this case, only one issue the way I see it, and that has to do with the credibility, the credibility on one issue here as to whether or not this defendant has his hand on the narcotics.

"If he didn't have his hand on the narcotics *and these narcotics were found in the apartment,* I don't think there is any case against this defendant" (emphasis added).

It is the position of the majority that the motion court's determination to suppress the evidence was based on the finding that the defendant was innocent of the possessory offense charged. While I agree that the ultimate question of whether a defendant is guilty of possessing contraband is ordinarily one to be left for trial, I do not think that a fair

reading of the court's decision leads to the conclusion that suppression was, in fact, premised upon a finding that the defendant was innocent of the substantive possessory offenses with which he had been charged.

As the majority has observed, the issue for resolution at the suppression hearing was whether the police had properly seized the contraband the defendant is alleged to have possessed. Key to this determination in the present context was where the contraband had been found, a sharply disputed issue. If, as Detective Barrett testified, the narcotics were found on or near the defendant, the legality of the seizure would be supportable upon the hearing record. If, however, as the defendant specifically contended, the narcotics were found elsewhere in the apartment, it is clear that the hearing record affords no ground upon which their seizure might be upheld. While the police, incident to the arrest of Thomas, a suspect in a shooting, may have been entitled to sweep through the apartment where the arrest occurred in order to assure their safety *(see, Maryland v Buie,* 494 US 325), they had no right to conduct any wider search of the premises.* Indeed, there is no contention that the seizure of the narcotics at issue would have been justified in any context but that in which Detective Barrett claimed it to have occurred. And, as Detective Barrett's account of the seizure was specifically discredited insofar as it concerned the location of the contraband, it follows that, as the court found, the seizure was illegal.

While the court might have been clearer in rendering its decision, I think it evident that the motion was granted, as it should have been, based upon the court's assessment of the propriety of the seizure rather than its evaluation of the sufficiency of the the proof of guilt. When the court stated that "[i]f he didn't have his hand on the narcotics and these narcotics were found in the apartment, I don't think there is any case against this defendant", it was not, as the majority suggests, expressing what would in the context of a suppression hearing, have been a gratuitous belief in the defendant's innocence, but was simply noting the obvious, namely, that if

---

* The Supreme Court was careful to emphasize that "a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises" (494 US, *supra,* at 335-336).

as the court had found the drugs had not been found within the defendant's reach, but elsewhere in the apartment, their seizure had been illegal necessitating their suppression, the effect of which would be the evisceration of the case against the defendant.

Of course, the consequence of suppressing evidence is not infrequently to prevent a prosecution from continuing. Thus, it is not, strictly speaking, correct to say, as the majority does, that "[w]hether or not the defendant possessed the cocaine was the issue that was for the jury, not the court, to resolve." It would have been for the jury if and only if the evidence at the heart of the People's case had not been suppressed. And, in determining to suppress that evidence it was entirely appropriate, under the circumstances presented, for the court to have made a finding respecting where the evidence was discovered. In a case in which the only permissible search would have been of the defendant and the area within his immediate reach, the court was not obliged to accept that the drugs had in fact been found within the allowable compass any more than a court would be obliged in a case where the plain view exception to the warrant requirement had been invoked to accept the contention that the contraband there at issue had been left in a spot where it would have been open to examination. In either situation the location of the contraband at the time of its seizure is clearly relevant to the disposition of the suppression motion.

Thus, while the question of the defendant's guilt of drug possession would have been one for the jury had essential evidence against the defendant not been suppressed, the distinct question of where the contraband had been discovered was entirely appropriate for the court's address at the suppression hearing. As the People themselves point out, the court's finding that the evidence had not been found on or near the defendant would not itself have foreclosed the jury from considering whether the defendant had either actually or constructively possessed cocaine; what does, however, foreclose the jury's consideration of the issue is rather that the disputed finding, under the facts at bar, requires the suppression of essential proof.

Of course, neither of the cases cited by the majority even remotely stand for the proposition that a court passing upon the legality of a seizure may not make findings as to where the disputed evidence has been recovered. The issue in *People v Washington* (51 NY2d 214) was whether a pretrial finding

that an inculpatory statement had not been made would preclude the use of the statement on cross-examination to impeach the defendant. The Court held that it would not since, although the statement had been suppressed from the prosecution's case-in-chief, it was nevertheless independently admissible for impeachment purposes as a prior inconsistent statement and, as is generally the case with prior inconsistent statements, its authenticity was a matter for the jury's determination. By contrast, in the present matter, assuming the contraband was properly suppressed, it will not be entered in evidence under any circumstances; the jury's consideration of the evidence having been precluded for all purposes there is no issue posed as to whether specific pretrial findings should prevent the jury's consideration of otherwise admissible evidence. In this case as in countless other cases in which contraband is suppressed, it is as a consequence of suppression and not any particular judicial finding made in connection therewith that the jury will be prevented from reaching the ultimate factual issues. The issue here presented then is not whether ultimate factual issues were for the jury as they doubtless would have been, but whether the suppression motion was properly decided and nothing in *Washington* may be read to even imply that a court ruling upon the admissibility of physical evidence may not make findings as to where the evidence was discovered. Indeed, as is hardly surprising, there is no case which embraces so utterly irrational a limitation on a suppression court's scope of inquiry. *People v Daniels* (37 NY2d 624), the other case cited by the majority apparently as authority for the limitation it would impose, does not concern itself in any way with the permissible range of a suppression court's inquiry, it merely holds that the presence of legally obtained narcotics in close proximity to a defendant is sufficiently corroborative of the testimony of an accomplice respecting the defendant's possession of drugs to permit the receipt of the accomplice's testimony in evidence. The relevance of this holding to the issues at bar is, to say the least, obscure.

While I think it evident that the hearing court did not premise suppression upon the determination of any issue which it was imperative for the jury to decide, even if it had, the proper course given the record on this appeal is not to reverse and deny the motion for suppression, but to remand so that the findings necessary to an appropriate determination of the motion can be made. Although the hearing court did make

findings respecting the detectives' entry into the apartment and apprehension of Thomas, the record is devoid of any findings concerning what transpired between Detective Barrett and the defendant just prior to the defendant's seizure. According to Barrett, he pursued the defendant only after the defendant lunged for what might have been a weapon. The defendant, on the other hand, not only testified that he did not lunge for anything but that he had been holding an infant when he was ordered to the floor, and that he was assaulted when he attempted to comply with the order without endangering the child. Obviously, if the defendant's version is credited his seizure must be found to have been illegal. As noted, the police, who entered the apartment purportedly in pursuit of Thomas, had no reason to suspect the defendant of any crime and, under the circumstances, would have been justified in seizing the defendant only if there had been some reason to suppose that the defendant posed a danger to them *(see, Maryland v Buie,* 494 US 325, *supra).* It ought to be evident that a man standing in open view with a baby in his arms would pose no danger to a gun-wielding police officer.

Notwithstanding the materially different accounts of what occurred, the majority has concluded without any explanation that given the defendant's actions, those of the detectives were justified. Thus, on the basis of a cold appellate record the majority has decided to credit Detective Barrett's version of the seizure. It is frankly disingenuous to state as the majority does that it is basing its determination upon the hearing court's credibility findings, since, as noted, the court made neither the factual nor, given the conflicting testimony, the necessary underlying credibility findings, respecting what occurred in the critical instants just prior to defendant's seizure. This Court's determination to credit Detective Barrett's testimony is all the more troubling since to the extent that credibility findings were made by the hearing court, Barrett's testimony was very seriously discredited. If ever there was a case in which factual findings were inappropriately made on the appellate record, it is this one where the necessary findings depend entirely upon an assessment of witness credibility. Plainly, this Court, not having heard the witnesses or observed their demeanor, is in no position to determine which witness's account is to be credited. It has been stressed on innumerable occasions that credibility findings are the province of the hearing court *(see, e.g., People v Falciglia,* 153 AD2d 795, *affd* 75 NY2d 935; *People v Rivera,* 121 AD2d 166,

*affd* 68 NY2d 786; *People v Martinez,* 111 AD2d 707, 710, *appeal dismissed* 67 NY2d 752; *People v Stroman,* 83 AD2d 370, 372; *People v Wright,* 71 AD2d 585, 586; *People v Garafolo,* 44 AD2d 86, 88). No reason is given by the majority why in this case such findings should be made by the Appellate Division. I cannot help but wonder whether a similar lack of restraint in the exercise of the Appellate Division's fact-finding power would obtain had this been a defendant's appeal.

Accordingly, I dissent and would affirm the order appealed.

SULLIVAN, KASSAL and RUBIN, JJ., concur with ROSENBERGER, J.; MURPHY, P. J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on December 16, 1991, reversed, on the law, the motion denied, and the matter remitted to the Supreme Court for further proceedings.